**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Opportunity Employment Commission,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>McLane Company, Inc.,<br><br>　　　　　　Defendant. | No. CV-12-02469-PHX-GMS<br><br>**ORDER** |

This is an action for enforcement of an administrative subpoena issued by the Equal Employment Opportunity Commission ("E.E.O.C.") to McLane Company, Inc. The E.E.O.C. has applied for an Order to Show Cause why the Administrative Subpoena Should Not be Enforced. (Doc. 1.) The E.E.O.C. has also moved to seal certain documents that it attached to its Reply. (Doc. 12.) McLane has moved to strike the exhibits filed under seal. (Doc. 22.) A hearing was held on November 16, 2012. The motions and hearing focused on requests for the results of the Industrial Physical Capacity Services Physical Capacity Exam ("IPCS PCE"), along with pedigree information and contact information for employees and applicants who had taken this exam.

**BACKGROUND**

This case involves McLane's use of the IPCS PCE for its employees. On August 8, 2008, the E.E.O.C. sent a letter to Bobby Carlson, the President of McLane Sunwest, a subsidiary of McLane, stating that it was conducting an investigation of McLane under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626 (2006) ("ADEA").

The letter stated the investigation was being conducted pursuant to two charge numbers. The first, charge number 540–2008–01093, is a charge filed by a McLane Sunwest employee on January 7, 2008, alleging that she had been discriminated against based on her gender when she had not been re-hired after taking maternity leave because she had failed the IPCS PCE. (Doc. 2-1, Ex. A-1). The second, charge number 540–2010–01761, was initiated by the E.E.O.C. itself pursuant to its authority under the ADEA. By November 2010, the E.E.O.C. determined that it would pursue the two charges separately. This Court ruled on the ADEA subpoena earlier this year. *See E.E.O.C. v. McLane Co., Inc.*, No. CV–12–615–PHX–GMS 2012 WL 1132758 (D. Ariz. Apr. 4, 2012).

McLane is now faced with a subpoena based solely on charge number 540-2008-01093. (Doc. 2-1, Ex. A-12.) That charge, filed by McLane Sunwest employee Damiana Ochoa, alleged discrimination on the basis of sex and disability. (*Id.*, Ex. A-1.) She alleged that she failed the IPCS PCE three times after returning to work from maternity leave, and consequently believed she has "been discriminated against because of [her] sex, female (pregnancy) in violation of Title VII of the Civil Rights Act of 1964, as amended." (*Id.*) She also made the following claim: "The Physical Capability Strength Test is given to all employees returning to work from a medical leave and all new hires, regardless of job position. I believe the test violates the Americans with Disabilities Act of 1990, as amended." (*Id.*) Based on this charge, the E.E.O.C. requested a variety of information from McLane in relation to the administration of the IPCS PCE, including pedigree information, such as the name, gender, date of birth, social security number and contact information for every person who took the test, along with the reason the person took the test, the person's score on the test, and any adverse action that McLane took based on the person's performance on the test. (*Id.*, Ex. A-10.) The E.E.O.C. later informed McLane that it was broadening the scope of its investigation to all McLane facilities nationwide. (*Id.*)

McLane responded on January 14, 2011, and objected to the request as overly

broad, unduly burdensome, and seeking information that is not relevant to the underlying charge. (*Id.*, Ex. A-11.) The letter noted differences between its grocery division, where Ochoa worked, and the food service division. The E.E.O.C. responded on February 15 by filing a subpoena that referenced Ochoa's charge and directed McLane to turn over the information. (*Id.*, Ex. A-12.) McLane petitioned to revoke the subpoena on February 22, 2011. (*Id.*, Ex. A-13.)

It appears that some information has been exchanged between the E.E.O.C. and McLane since that time and since the Court's Order in the ADEA case. McLane has produced a database containing all individuals who have taken the IPCS PCE in any Grocery position nationwide. (Doc. 9 at 5.) This database does not include the names or social security numbers of those individuals, but does include their location, gender, job class, test date, reason for taking the test, level achieved, whether they met the minimum requirements, and other details relating to their test scores. (*Id.* at 5-6.) In response to the Court's April Order in the ADEA case, McLane is also in the process of compiling information as to whether an adverse action occurred within 90 days of the IPCS PCE, and has stated that it will produce the information to the E.E.O.C. as soon as the dataset is complete. (*Id.* at 6.)

The parties dispute the necessity of producing the following additional information for the individuals who have taken the test: name, social security number, date of application, date of hire, last known address, phone number, reason for termination (in connection with test results or not), and their medical or disability information. In addition, McLane has only produced information relative to its grocery division, not the food services division. The E.E.O.C. continues to seek for the aforementioned information, and affirmed its position at the hearing on November 16, 2012.

## DISCUSSION

I. **LEGAL STANDARD**

A district court's review of an administrative subpoena is "strictly limited." *E.E.O.C. v. Children's Hosp. Med. Ctr.,* 719 F.2d 1426, 1430 (9th Cir.

1983), *abrogated on other grounds by Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991), *as recognized by Prudential Ins. Co. v. Lai,* 42 F.3d 1299, 1303 (9th Cir. 1994)). Raising a defense to the merits of the charge or investigation does not defeat a subpoena. *E.E.O.C. v. Karuk Tribe Housing Auth.,* 260 F.3d 1071, 1076 (9th Cir. 2001). A court reviewing the validity of an administrative subpoena instead conducts a three-part inquiry, asking: "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *Children's Hosp.,* 719 F.2d at 1428. The administrative agency shoulders the burden of demonstrating that these three prongs are met. *Id.*

If the agency demonstrates that it has authority to investigate, the procedural requirements have been followed, and the evidence is relevant and material to the investigation, the burden shifts to the respondent, who must show that a subpoena is "overbroad or unduly burdensome" for a court to quash it. *E.E.O.C. v. Quad Graphics,* 63 F.3d 642, 648 (7th Cir. 1995). The question of whether an administrative subpoena is overbroad may be answered by asking whether "the demand for information is too indefinite or has been made for an illegitimate purpose." *University of Penn. v. EEOC,* 493 U.S. 182 (1990). A subpoena may be unduly burdensome if either 1) "the cost of gathering this information is unduly burdensome in the light of the company's normal operating costs," or 2) "gathering the information would threaten [a respondent's] normal business operations." *E.E.O.C. v. Maryland Cup Corp.,* 785 F.2d 471, 479 (4th Cir. 1986).

## II.     ANALYSIS

The E.E.O.C. and McLane dispute the first and third prongs of the validity inquiry. McLane asserts that the E.E.O.C. lacks authority to request information regarding disabilities based on the subpoena in question here. It also argues that the additional "pedigree" information sought for both the gender and ADA claim is not relevant at the moment. Finally, McLane complains of the breadth of the E.E.O.C.'s inquiry and asserts

that production of all the requested information would create a significant burden.

### A. Validity of Subpoena

The subpoena is valid if the E.E.O.C. can show that Congress has authorized it to issue such a subpoena, the subpoena was issued in a procedurally proper way, and the information requested in the subpoena is relevant to the agency's investigation. *Children's Hosp.,* 719 F.2d at 1428. The district court plays a "strictly limited" role at this point. *Id.* at 1430.

#### 1. Jurisdiction

Investigations conducted by the E.E.O.C. under Title VII or the ADA are "triggered by the filing of a charge of discrimination." *E.E.O.C. v. Federal Exp. Corp.,* 558 F.3d 842, 849 (9th Cir. 2009). The procedure is described in 42 U.S.C. § 2000e-5(b) (2006). The charge can be filed "by or on behalf of a person claiming to be aggrieved, or by a member of the Commission." *Id.* There are thus three categories of charges that give rise to an E.E.O.C. investigation: those brought by an aggrieved person herself, those brought by someone on behalf of an aggrieved person, and those brought by a member of the Commission on behalf of an aggrieved person. The common statutory requirement, though, is an aggrieved person. *See Federal Exp.*, 558 F.2d at 849 ("A charge may be filed by an individual who alleges that he was discriminated against or by a Commissioner of the EEOC."). It is when an aggrieved person has a charge that the E.E.O.C.'s broad investigatory powers are triggered. And the subpoena seeking information relating to potential violations of Title VII and the ADA must reference "a person claiming to be aggrieved."

The investigative powers, broad as they are, derive from the charge. "[T]he EEOC's power of investigation is anchored to the charge of discrimination, and courts must be careful not to construe the charge and relevance requirements so broadly as to confer 'unconstrained investigative authority' upon the EEOC." *E.E.O.C. v. Kronos Inc.*, 620 F.3d 287, 297 (3d Cir. 2010). One charge appears on the subpoena in question, and the Court confines its "strictly limited" analysis to the Ochoa charge. She first alleges that

- 5 -

she suffered gender discrimination because of the administration of the IPCS PCE. (Doc. 2-1, Ex. A-1.) There is little dispute that Ochoa is an "aggrieved party" within the meaning of the statute and that the charge gives the E.E.O.C. jurisdiction to investigate the IPCS PCE discriminates on the basis of gender.

But Ochoa's second charge—that she believes the test discriminates on the basis of disability—does not give the E.E.O.C. jurisdiction to investigate ADA violations. The statute requires that a charge be tied to a specific aggrieved party. *See* 42 U.S.C. § 2000e-5(b) (charges to be filed "by or on behalf of a person claiming to be aggrieved"). The charge does not mention any instance of discrimination on the basis of disability. Ochoa does not claim she is disabled. The parties agreed at the hearing that pregnancy is not typically a disability within the meaning of the ADA, and that Ochoa does not appear to have had the sort of atypical pregnancy that would trigger the ADA. In addition, Ochoa does not purport to bring the ADA charge for another aggrieved party. She instead makes a blanket assertion that the test violates the ADA. Such a charge does not comport with the statute. To ignore the plain language of the statute and to allow the EEOC to investigate a generalized charge of discrimination that is untethered to any aggrieved person would invite the oft-cited "fishing expedition," *Peters v. U.S.,* 853 F.2d 692, 699-700 (9th Cir. 1988), to become a full-blown harvest operation. If anyone could file a charge—devoid of a specific aggrieved party—that asserts that such-and-such policy discriminates on any number of bases, the E.E.O.C. would have close to unlimited jurisdiction, and it would make virtually limitless any investigation the EEOC wished to undertake.

The E.E.O.C. responds to the absence of an ADA-aggrieved party in the Ochoa charge by attaching three documents to its Reply. Two are charges that contain ADA grievances, and one is a declaration from a McLane employee who asserts that she was discriminated based on her diagnosis of cancer. (Docs 13-1, 13-2, 13-3.) Yet this is an Application for an Order to Show Cause Why an Administrative Subpoena Should Not be Enforced in the Ochoa investigation, not any of the three investigations that are

attached to the Application. (Doc. 1.) "The EEOC is entitled only to evidence that is 'relevant to the charge[s] under investigation,'" and where there is only one charge listed on the subpoena, it is that charge that determines jurisdiction to enforce a subpoena. *E.E.O.C. v. Burlington N. Santa Fe R.R.*, 669 F.3d 1154, 1157 (10th Cir. 2012) ("The subpoena focuses on [two] charges. Nowhere in the document is there any reference to any other charge—by way of a reference to any other charging party, an additional charge number, or anything else—that might indicate that an additional charge is at issue."). The E.E.O.C. might have withdrawn the initial subpoena and updated it to include the other charges, but it chose to rely solely on the Ochoa charge. It is true that "[o]nce the EEOC begins an investigation, it is not required to ignore facts that support additional claims of discrimination if it uncovers such evidence during the course of a reasonable investigation *of the charge*." *Kronos*, 620 F.3d at 297 (emphasis added). But the additional claims must arise in the course of a valid investigation of a valid charge. *See Gen. Tel. Co. of the N.W., Inc. v. EEOC*, 446 U.S. 318, 331 (1980) ("Any violations that the EEOC ascertains in the course *of a reasonable investigation of the charging party's complaint* are actionable.") (emphasis added). The Ochoa charge did not give the E.E.O.C. authority to investigate ADA violations. Nor has the E.E.O.C. claimed that it discovered these ADA violations while investigating Ochoa's gender discrimination claim. Consequently, the Court will not consider the additional charges attached to the E.E.O.C.'s Reply.

The subpoena the E.E.O.C. seeks to enforce is directly solely to the matter of "Ochoa v. McLane Sunwest." That matter involves two charges, only one of which involves an actual aggrieved party—a charge of gender discrimination. Therefore, the E.E.O.C. has jurisdiction to investigate the Title VII issue. The E.E.O.C.'s application to enforce the portions of the subpoena that require production of information relating to disability is denied.

### 2. Relevance

McLane also objects on relevance grounds to the scope of information requested in the subpoena for the gender discrimination claim. At this point, McLane has provided (or will shortly provide) data on employee test scores, location, gender, job class, test date, reason for taking the test, level achieved, whether they met the minimum requirements, and other details relating to their test scores for the grocery division. (Doc. 9 at 5-6.) The E.E.O.C. has asked for pedigree information for each individual that has taken the test: name, address, social security number, and so forth. The relevance limitation "is not especially constraining," *E.E.O.C. v. Shell Oil Co.,* 466 U.S. 54, 68 (1984), but it is not a rubber-stamp procedure, see *EEOC v. Harvey L. Walner & Assoc.,* 91 F.3d 963, 968 (7th Cir. 1996) (requiring that there must be "a reasonable nexus between the initial charge and the subsequent allegations in the complaint").

Again, the charge referenced in the subpoena defines the scope of the E.E.O.C.'s investigatory power. *See EEOC v. United Parcel Serv.,* 94 F.3d 314, 318 (7th Cir. 1996) (recognizing that an investigation must be "reasonably related in scope to the allegations of the underlying charge"). The Ochoa charge alleges that the IPCS PCE examination systematically discriminates on the basis of gender, as evidenced by her three unsuccessful attempts to pass. Judging by the E.E.O.C.'s filings and the discussion at the hearing, the primary motivation for obtaining the pedigree information related to the ADA charge. That information is not relevant at this stage to a determination of whether the IPCS PCE systematically discriminates on the basis of gender. The Court's statements in the earlier ADEA matter apply with equal force here:

> The E.E.O.C.'s independent investigatory power is broad, but as it has defined its investigation, the genders, names, contact information, and social security numbers of individual employees are simply not relevant— an individual's name, or even an interview he or she could provide if contacted, simply could not "shed light on" whether the ICPS PCE represents a tool of [gender] discrimination in the aggregate. The E.E.O.C. has provided nothing to the Court to allay the concerns raised by McLane that such data has been requested as a means of trolling for possible complainants . . . . 'An administrative subpoena may not be so broad so as

to be in the nature of a "fishing expedition."

*McLane*, 2012 WL 1132758 at *5 (internal citations omitted).

McLane has provided or will soon provide the information, without individually identifying pedigree information, requested by the E.E.O.C. and ordered by this Court in the ADEA matter. The addition of the gender variable will enable the E.E.O.C. to determine whether the IPCS PCE systematically discriminates on the basis of gender. The results may indicate that it does. At that point, pedigree information may become relevant to an investigation and the E.E.O.C. may find it necessary to seek such information. Consequently, the E.E.O.C.'s application to enforce the subpoena's directive to provide pedigree information for all those who have taken the IPCS PCE is denied.[1]

**B.     Breadth of Subpoena**

McLane objects to the breadth of the subpoena, which it claims is addressed to the entirety of the McLane corporate family. The briefing has clarified, however, that the E.E.O.C. is only seeking the information from McLane's nationwide grocery operations, not the food service division. (Doc. 15 at 8.) McLane has stated in its Response that it has provided a nationwide database for grocery applications and employees, and it appears this database is what McLane is updating with the adverse employment decision data. (Doc. 9 at 5-6.) Given the allegation in the Ochoa charge that the IPCS PCE itself discriminates on the basis of gender and that test is administered nationwide for the grocery division, nationwide data is necessary. To the extent McLane objects to providing nationwide data on overbreadth grounds, its objections are unsuccessful. McLane must produce the following information for its Grocery applicants and employees, along with a unique identification number: (1) sex; (2) test score; (3) date of the test; (4) position applied for or reason the test was taken; (5) required score for that position; and (6) whether applicant or employee suffered adverse employment action

---

[1] The E.E.O.C. states in its Reply that "the statistical evidence indicates McLane's application of the PCE *violates the four-fifths rule* with respect to gender." (Doc. 15 at 7.) Given that McLane has not yet produce all of the requested information, most importantly whether an adverse employment decision occurred within 90 days of taking the test, the Court does not see how such a conclusion could be reached at this time.

within 90 days of test result. The remaining information is not relevant to the investigation of potential gender discrimination in the IPCS PCE at this juncture.

## CONCLUSION

The E.E.O.C. has received a broad grant of power from Congress to investigate allegations of Title VII and ADA violations. Yet that investigative authority derives from the filing of specific charges by specific individuals. The subpoena issued by the E.E.O.C. is governed by the charges it references. The one charge referenced here—the Ochoa charge—alleges that the IPCS PCE discriminates on the basis of gender and disability. Only the gender charge is tied to a specific grievance, however. The ADA charge fails to comply with the statute and consequently cannot trigger an E.E.O.C. investigation into whether the IPCS PCE discriminates on the basis of disability. McLane has stated its willingness to provide nationwide information on the administration of the IPCS PCE that would allow the E.E.O.C. to determine whether the test discriminates on the basis of gender. Specific pedigree information does not, at this stage, illuminate that inquiry. Consequently, the subpoena at issue here is enforceable only to the extent it requires the information described in this order. The remaining portions fall outside the E.E.O.C.'s broad authority to investigate allegations of discrimination.

**IT IS THEREFORE ORDERED:**

1. The E.E.O.C.'s Motion to Seal Document (Doc. 12) is **GRANTED**. The Clerk of Court is directed to file under seal the lodged proposed exhibits (Doc. 13).

2. McLane's Motion to Strike Exhibits (Doc. 22) is **denied as moot.**

3. Regarding those people who applied to McLane and took the IPCS PCE, McLane must provide the E.E.O.C. one of the following: **either**

    a. Information on applicants who took the IPCS PCE including:

       i. The applicant's gender at the time the test was taken
       ii. The applicant's score on the test
       iii. The date the applicant took the test

   iv. The position for which the applicant applied

   v. The score required for passing the test for the position in question

   vi. Whether the applicant suffered adverse employment action within 90 days of test result; **or**

 b. Access to McLane's human resources records sufficient for the E.E.O.C. to obtain the data in item 3(a) above.

4. McLane must provide the E.E.O.C. information on employees who took the IPCS PCE test, including

 a. The employee's gender at the time the test was taken

 b. The employee's score on the test

 c. The date the employee took the test

 d. The reason the employee took the test

 e. The score required for passing the test for the reason the employee took the test

 f. Whether the employee suffered adverse employment action within 90 days of test result.

5. The Clerk of Court is directed to terminate this action.

Dated this 19th day of November, 2012.

*A. Murray Snow*
/G. Murray Snow
United States District Judge

- 11 -